### JOHN H. GARRETT v. JAS. O. CHESIRE.

The homestead laws of North Carolina do not impair the obligation of contracts, and are not unconstitutional.

(*Hill* v. *Kessler*, 63 N. C. Rep., 437; *McKeithan* v. *Terry* 64 N. C. Rep. 25, cited and approved.)

CIVIL ACTION for the delivery of personal property, tried before *Watts*, *J.*, at the Spring Term, 1863, of CHOWAN Superior Court.

On the 10th May, 1871, certain executions issued against the plaintiff from Chowan Superior Court, on debts contracted since the adoption of the Constitution in 1868. The property in controversy with other property, including a horse, was claimed and allotted to the plaintiff as his "personal property exemption," under the 10th article of the Constitution, and the Acts of the General Assembly relating thereto, and the said executions were returned endorsed, "nothing to be found." On the 20th May, 1871, the same property was sold under an execution from the United States Circuit Court, at Raleigh, for a debt contracted in 1867, at which sale defendant purchased the property and was placed in possession thereof by the Marshal.

On the 21st of May, 1871, plaintiff served the defendant with the affidavit and bond in this cause, and the property was taken by the sheriff from defendant and delivered to plaintiff. About two hours after that a copy of the summons was served on the defendant, the original having been filed with the Clerk.

Defendant appeared and moved to dismiss the action because it was not properly instituted. Motion refused, and defendant excepted.

Upon the trial, the defendant asked the Court to charge that the property in controversy was liable to the execution from the United States Court, and the seizure and sale by

the Marshal, under which defendant claimed, was valid.  His Honor decline to charge as prayed, whereupon defendant again excepted.

Verdict and judgment for the plaintiff, from which defendant, after an ineffectual motion for a new trial, appealed.

*A. M. & J. A. Moore,* for appellant.
*Gilliam & Pruden,* contra.

READE, J.  The complaint alleges that on the 3rd of June, 1871, the plaintiff " was the owner and in possession. of one bay horse and one black mule, of the value of $300 ;. that on that day the defendant unlawfully took the same from his posession and converted them to his own use."' There is nothing else alleged in the complaint.

The answer, after objecting to the want of a summons,' " denies all the allegations in the complaint."  There is. nothing else in the answer.

The *case* states that the property in controversy had been allotted to the plaintiff, as his personal property exemption. as against certain executions which were issued against him from Chowan Superior Court on debts contracted since the ratification of the Constitution ; and thereupon the execu-- tions were returned to court, endorsed, "nothing to be found."  This is of no importance in the case, and we sup- pose it was stated only to explain why the allotment had been made.

It is further stated as follows : " On the 20th of May, 1871,. the same property was sold under an execution from United States Circuit Court at Raleigh, for a debt contracted and due in 1867, at which sale the defendant purchased and was placed in possession by the Marshal."

It is further stated that, " upon the trial the defendant asked the Court to charge that the property in controversy

was liable to the execution from the United States Circuit Court, and the seizure and sale by the Marshal under which he claimed were valid."

The Court refused so to charge. The Jury found the issues for the plaintiff, and the defendant appealed.

Having only appellate jurisdiction, it is plain that we are confined to the record; and that we can know no fact which is not stated, and can *decide* no point which is not raised, and must sustain his Honor unless error is shown. The only error alleged is the refusal of his Honor to charge that the property in controversy was liable to the execution from the United States Court, and that the sale by the Marshal was valid. His Honor must be sustained unless we can see that the execution and sale were regular and valid. Now, if there can be such a thing as an invalid execution, we are to take it that this was invalid. It is true that it is stated that it issued upon a debt due in 1867, and if we assume what is not stated, that it was a debt due from the plaintiff, still it is not stated that there ever was any judgment upon the debt, in any court, at any time. And if there was a judgment, it is not stated whether it was alive or dormant, or whether it was against the plaintiff or some other person, or whether it was issued to the Marshal, or what was its form or substance, or whether the levy and sale were regular. Surely we cannot say upon such a skilfully observed state of facts, that the defendant was entitled to the charges asked for.

And his Honor could not assume that there was a regular judgment and execution, without assuming what ought to be improbable, that an inferior United States Court sitting in North Carolina, would subject the property of its citizens to sale, when the highest Court in the State had repeatedly decided it was not subject to sale.

It was stated at the bar by the counsel on both sides that a recent decision of the Supreme Court, (*Gunn* v. *Barry*)

which went up from Georgia, was supposed to be in conflict with *Hill* v. *Kessler*, 63 N. C. Rep., and several subsequent cases in this Court in regard to our homestead laws; and that it is of great importance to the public, as well as to those parties, that this Court should reconsider Hill and Kessler. If it were true that the United States Supreme Court had decided the principles laid down in *Hill* v. *Kessler* contrary-wise thereto, we should make haste to conform our decisions to the decisions of the United States Supreme Court, because in all cases within its jurisdiction that is the highest Court, and the proper administration of justice and the true principles of our government, and the good order of society and the comity of courts, require subordination. We have not been furnished with an authenticated copy of the opinion in the case of Gunn and Barry and have seen only the newspaper report, which we presume to be correct. I have considered it carefully, and I do not think it is in conflict with Hill and Kessler, or with any other decision of this Court. On the contrary, it is in exact conformity with our decisions. If there is anything seemingly in conflict it is only a *dictum* which bind neither that Court nor us. The facts in Gunn and Barry were, that at the time when the Georgia homestead laws were passed Gunn not only had a debt against this debtor, but had sued him, and obtained a judgment against him, which judgment was a *lien* upon the debtor's land and thereby Gunn had a *vested right* in the land, which the homestead laws could not divest. And therefore the United States Supreme Court, in its opinion well says: "The effect of the Act in question, (the Georgia homestead Act) under the circumstances of the judgment, does indeed not merely impair, it annihilates the remedy. There is none left. But the Act goes still further. It withdraws the land from the lien of the judgment, and thus destroys a vested right of property, which the creditor had acquired in the pursuit of the remedy to which he was entitled by the law as it stood

when the judgment was recovered. It is in effect, taking one person's property and·giving it to another without compensation." This principle was expressly conceded by us in *Hill* v. *Kessler*; and was expressly decided by us in *Mc-Keitham* v. *Terry*, 64 N. C. Rep., p. 25, and was the only point in that case. And subsequently we decided that where there was the lien of a trust deed the homestead law did not operate.

It is true that it is not only *decided* in *Gunn* v. *Barry* that vested rights were effected in that case, but it is also said that the Georgia homestead laws impair the obligation of contracts, and are therefore void. It is also conceded in *Hill* v. *Kessler*, and in all cases in our Court, that if our homestead laws impair the obligations of contracts, they are void, but our cases are all put upon the ground that our homestead laws do not impair the obligations of contracts. And it may very well be that the Georgia homestead laws do impair contracts, while North Carolina homestead laws do not. They are not at all alike. In order to show that the Georgia homestead laws do impair the obligation of contracts, the learned Judge in his opinion copies the Georgia exemption laws prior to the present homestead laws to show that they were very small—land not exceeding $200 in value, and personal property of small amount, and then he copies the homestead exemptions to show that they are very large, $2,000 land in fee simple, with all subsequent improvements in addition, and $1,000 personal property. And then the learned Judge says, "No one can cast his eyes over the former and later exemptions without being struck by the greatly increased magnitude of the latter." And thence the inference is, that the object of the later exemptions was not the securing of necessaries to men and their families, but to defeat debts.

Now compare our former exemption laws and our present homestead laws with those of Georgia. Our Act of 1856,

Rev. Code, exempt personal property, articles by name, which may be of the value of several hundred dollars, more or less, according to the circumstances of the debtor's family. And in 1866–'67, prior to the existence of the debt in the case before us, an Act was passed exempting "all necessary farming and mechanical tools, one work-horse, one yoke of oxen, one cart or wagon, one milch cow and calf, fifteen head of hogs, 500 lbs. of pork or bacon, 50 bushels of corn, 20 bushels of wheat, household and kitchen furniture not exceeding $200 in value; the libraries of attorneys at law, practicing physicians and ministers of the gospel, and the instruments of surgeons and dentists, used in their profession. Acts of 1866–'67, chap. 61.

It is apparent that an allotment of those articles approximate $1,000, and in many cases would exceed that sum in value. And the same Act allows a homestead of 100 acres, without restriction as to value, which in many cases would be worth, with the improvements, many thousands.

In 1868 our Constitution was adopted, and in that our present homestead law is limited to $1,000 realty, not in fee simple, but for a limited time, and personalty to the value of $500. Can it be said of our homestead law, as the learned Judge said of the Georgia law, that any one in casting his eye over them, as compared with former exemptions, would be struck by the magnitude of the increase? Our homestead law is not an *increase*, but a *restriction* upon former exemptions, and they were not made to *defeat debts*, but to *secure necessaries and comforts* to our citizens.

From this explanation it will be seen that the decision of the Supreme Court of the United States in the Georgia case conflicts in nothing with our own decisions, but they are in exact conformity. The Georgia case decides two points: first, that in that particular case, the plaintiff had obtained a judgment on his debt, before the homestead laws were passed, and that in Georgia that judgment was a *lien* upon

the debtor's property, which he had at its rendition ; and that thereby the plaintiff had a *vested right,* a *property,* which could not be destroyed or taken from one person and given to another. We distinctly conceded this principle in *Hill* v. *Kessler,* and we expressly decided it in *McKeathen* v. *Terry.* There is then no conflict on this point. There is, however, this difference between the law of Georgia as stated in the Georgia case and the law in North Carolina : a judgment in North Carolina prior to the Code has never been held to be such a lien upon property as to create a *vested right* or *property* in the plaintiff, or to divest the property out of the defendant, or to invest it in the officer. The only force of the lien has been to prevent the debtor from selling it. It requires not only a judgment, but a *levy* to change the *property. Ladd* v. *Adams,* 66 N. C. Rep., 164 ; *Norton* v. *Mc-Call,* Ibid. 159.

The second point decided in *Gunn* v. *Barry* is that the Georgia homstead laws impair the obligations of contracts. We conceded, in *Hill* v. *Kessler,* that any law which had that effect was void. We said : " We concede that if this exemption impairs the obligation of contracts, either expressly or by implication, it is against the Constitution of the United States, and therefore void. * * * We concede also that a contract must be understood with reference to existing laws for its enforcement." And we said, also, that the State cannot abolish or injuriously change the remedy. It is not the decision of the United States Supreme Court, and our decisions, that are in conflict, but it is the Georgia homestead laws and North Carolina homestead laws that are unlike, as has been already shown.

I know that we cannot always look to the hardship of cases to guide our decisions—they are the quicksands of the law—but still it is proper to look to the effect of our decisions to enable us to see whether we are carrying out the purposes of legislation. What is the purpose of exemption

legislation? Is it to defeat debts? We have repeatedly said that this was not the object of our exemption laws, but that the purpose was to secure necessaries and comforts for our citizens. This is not left to inference, but our laws have themselves declared this to be the purpose. Rev. C., chap. 45, sec. 8. And this is paramount to all debts.

The Supreme Court of the United States in a late case, *Vann Hoffman* v. *The City of Quincy*, 4 Wal., 535, in speaking of exemptions which the State may make, says: "They may also exempt from sale under execution the necessary implements of agriculture, the tools of a mechanic and articles of necessity in household furniture. It is said regulations of this description have always been considered in every civilized community as properly belonging to the remedy, to be exercised by every sovereignty according to its own views of policy and humanity." And in a former case, *Bronson* v. *Kinzee*, 1 How. 311, TANEY, C. J., said the same thing, adding that "It must reside in every State to enable it to secure its citizens from unjust and harassing litigation, and to protect them in those pursuits which are necessary to the existence and well being of every community." And in *Planter's Bank* v. *Sharpe*, 6 How. 301., Mr. Justice WOODBURY, in delivering the opinion of the United States Supreme Court, enumerated exemption laws among the examples of legislation which might be constitutionally applied to existing contracts. The purpose of our legislation being to secure its citizens the "necessaries and comforts" of life, and this having been decided to be a legitimate purpose, and paramount to all debts, let us see in what condition our people would be if our homestead laws are declared to be void. Our homestead and personal property exemption Act repeals all other laws upon the subject. Therefore our debtor class are to be left without any exemption whatever. Not even a bed or a crust. Nor is there any relief in bankruptcy, because a large portion of the

debtors have not the means to pay the expenses, nor are their debts large enough to bring them under the bankrupt law.

And furthermore, the late amendment to the bankrupt law allows such exemptions in each State as the State law makes, and North Carolina exempts nothing.

And then we have it that exemption laws, which repeal former and larger exemption laws, and which are therefore better for the creditor, are declared void because they are too large and impair contracts. And here it is to be considered, if necessary exemptions are constitutional and unnecessary ones are unconstitutional, who is to judge of what is necessary? It would seem that the Legislature is the proper body. Legislatures have heretofore done it, and the Legislature of every State in the Union has done it. And in no single case has a Court ever done it. The nearest a Court has ever come to it is in the Georgia case, in which the Court says, that where there was an exemption of $200 worth of land, and it was increased to $2,000, the "magniture of the increase" was palpable, and made it void. Suppose this case: A widow is allowed a year's support, say $100, and the Legislature alters the law from $100 to $200, would the courts undertake to say that it was unreasonable or unnecessary, and therefore void? If from $100 to $1,000 it would be palpable. Or suppose the same as to a debtor. I suppose the increase would have to be *striking*, and the want of necessity *palpable*. It would be verging on the ridiculous to say that the Supreme Court of the United States, or any other court, better knows the details of what is necessary for the "comfort and support" of the citizens of North Carolina than the Legislature of the State, or that it is a question of law, unless in palpable cases. And it would be inhumanity to say, that because the Legislature repealed one exemption law and substituted another and a lesser one, therefore the debtor should not have any exemp-

tion at all. And this, too, at a time when, owing to peculiar circumstances, probably one-half of the debtor class are owing more *old* debts than they can pay. Nor is this view irrelevant, because, as I have already shown in the quotations from the United States Supreme Court decisions, exemption laws are based upon " policy and humanity ;" and they do not impair, but are paramount to debts. If under our circumstances our people are to be left without any exemptions, the policy of christian civilization is lost sight of, an we might almost as well return to the inhumanity of the Twelve Tables of the Roman law : " If the debtor be insolvent to several creditors, let his body be cut in pieces on the third market day. It may be cut into more or fewer pieces with impunity ; or, if his creditors consent to it, let him be sold to foreigners beyond the Tiber." Cooper's Justinian, 655, App.

This, at least, might not involve his wife and children in his suffering ; and besides, as long as the creditor chose to keep him in custody under the Roman law, he was obliged to allow him a " pound of meal a day." But, if our exemptions are declared void, then both the debtor and his family go without even his " pound of meal."

The opinion in *Hill* and *Kessler*, the leading case in our Court, was prepared with care, after much reflection and investigation ; the conclusion arrived at was against my former impressions and prejudices, and against my pecuniary interest, but I was satisfied then, as I am now, that the decision was right. And it will be upheld as the law in North Carolina, unless and until the Supreme Court of the United States shall decide that the homestead laws of *North Carolina* are void.

There is no error.

PER CURIAM.                                    Judgment affirmed.